[No. 4058-5-III. Division Three. March 2, 1982.]

TAYLOR DISTRIBUTING CO., INC., *Appellant*, v. JUDITH C. HAINES, *Respondent*.

---

*Dennis W. Reynolds* and *Gustafson & Reynolds,* for appellant.

*Bernard J. Gallagher,* for respondent.

GREEN, J.—Taylor Distributing Co., Inc. (Taylor) appeals from a judgment dismissing its real estate mortgage foreclosure action against Judith C. Haines and Maurice J. Haines and the award of statutory attorney's fees and costs to Mrs. Haines. The trial court held the mortgage was void because only Mrs. Haines executed it.

Taylor states the issue as follows:

Can a party [Mrs. Haines] to a defunct marriage, after executing a note and mortgage subsequent to [an] oral decision by the court dissolving the marriage relationship and awarding that party the property that secured the

note, default in payment of the note and take advantage of her own act and now assert improper execution of the mortgage and note on community property principles?

The facts are not in dispute. Mrs. Haines commenced a dissolution action against her husband. Mr. Haines moved out of their family home approximately February 1, 1977. On March 30, following the dissolution hearing, the court orally granted the dissolution and awarded the home acquired by the parties during marriage to Mrs. Haines. A lien on the property was granted in favor of Mr. Haines.

During the marriage, Mrs. Haines operated a retail carpet business and incurred a debt to Taylor. On April 1, 1977, Mrs. Haines executed a promissory note and mortgage on the home to Taylor in payment of the debt. Mr. Haines was unaware of this transaction. On May 12, the decree of dissolution was entered and, in conformity with the court's oral decision, the home was awarded to Mrs. Haines as her sole and separate property. The decree also provided that Mrs. Haines assume and pay the balance owed to Taylor. The lien orally granted by the court to Mr. Haines was confirmed in the amount of $6,500 to be satisfied within 12 months of the date of the decree.

On January 20, 1978, Mrs. Haines filed a petition for bankruptcy and claimed a homestead exemption in the home. With leave of the bankruptcy court, Taylor then brought this foreclosure action on May 30, 1979, naming Mr. and Mrs. Haines as parties. Mr. Haines was served by publication. He contacted Mrs. Haines when he was told about the article appearing in the newspaper. She informed him Taylor was suing her and he had been named in the suit. He did not enter an appearance in the proceedings. Based on the foregoing facts, the trial court granted judgment in favor of Mrs. Haines and Taylor appeals.

Taylor contends the court erred in determining the mortgage was void because Mr. Haines did not sign it. It argues the mortgage was voidable only at the option of the nonsigning spouse, Mr. Haines, and since he did not disaffirm it, the mortgage was enforceable. On the other hand,

Mrs. Haines argues the 1972 amendments to the community property law, RCW 26.16, voids any transaction encumbering real property without both spouses' signatures. She further argues Mr. Haines did nothing which would estop him from claiming the transaction was void or show he ratified or authorized it.

 RCW 26.16.030(3) states:

Neither spouse shall sell, convey, or encumber the community real property without the other spouse joining in the execution of the deed or other instrument by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument must be acknowledged by both spouses.

This section changed the wording of the former statute,[1] only to the extent of equalizing the rights and duties of the spouses; the nonjoining spouse, either male or female, now has the power to disaffirm the transaction where that spouse has not joined in its execution. Cross, *Equality for Spouses in Washington Community Property Law—1972 Statutory Changes,* 48 Wash. L. Rev. 527, 535 (1973). The current statute, like its predecessor, does not state its effect is to void the instruments signed by only one spouse. The legislature is presumed to have been aware of prior judicial interpretations on this point and has not seen fit to change those interpretations. Therefore, the cases defining the extent of a spouse's transfer power under the former statute are applicable here. *See, e.g., In re Marriage of Little,* 96 Wn.2d 183, 189–90, 634 P.2d 498 (1981); Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 783 (1974).

 In *Stabbert v. Atlas Imperial Diesel Engine Co.,* 39 Wn.2d 789, 791–92, 238 P.2d 1212 (1951), after reviewing

---

[1]The section was formerly codified in RCW 26.16.040, which states:

"The husband has the management and control of the community real property, but he shall not sell, convey or encumber, the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife: . . ."

several cases which had used the terms "void" or "invalid" when referring to an instrument not signed by one of the spouses, the court concluded those terms were "used in the sense that the document in question was unenforcible . . ." under the particular facts of that case. The court then quoted 1 S. Williston, *Contracts* § 15, 22 (rev. ed.):

"An agreement which produces no legal obligation is frequently called a void contract. Though the phrase is often convenient, it is a contradiction in terms. If an agreement is void it is not a contract. A voidable contract, however, is common in the law. Such a contract is defined in the Restatement of Contracts [1 Restatement of the Law of Contracts 12, § 13] as one 'where one or more parties thereto have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract; or by ratification of the contract to extinguish the power of avoidance.' Infancy, fraud, mistake, duress, some kinds of illegality, all afford ground for rescinding or refusing to perform a contract. Unless rescinded, however, a voidable contract imposes on the parties the same obligations as if it were not voidable." Cf. 1 Corbin on Contracts 11, § 6 *et seq.*

*Stabbert* held the lease was voidable, not void, and the power of avoidance was possessed by the wife, whose signature did not appear on the document. This analysis finds support in other decisions. *See Sadler v. Niesz,* 5 Wash. 182, 194, 31 P. 630 (1892); *Koth v. Kessler,* 59 Wash. 641, 110 P. 540 (1910); *Tombari v. Griepp,* 55 Wn.2d 771, 350 P.2d 452 (1960); *Sander v. Wells,* 71 Wn.2d 25, 426 P.2d 481 (1967).

Mrs. Haines argues since Mr. Haines had no knowledge of and did not participate in executing the mortgage, his right to disaffirm the transaction has not been extinguished. Under the facts here, we disagree. In this case, only a skeleton of the marriage remained at the time Mrs. Haines executed the mortgage. The court's oral decision, which was consistent with the decree entered later, awarded

the home to Mrs. Haines. Consequently, as a practical matter Mr. Haines' only interest in the property at the time it was encumbered was his lien.[2]

■■ RCW 26.16.030(3) is designed to protect the nonsigning spouse against improvident transfers or encumbrances involving major assets belonging to the community. *See Sadler v. Niesz, supra* at 192; Cross, 48 Wash. L. Rev., *supra* at 538. In *Dizard & Getty v. Damson,* 63 Wn.2d 526, 528–29, 387 P.2d 964 (1964), the court stated community property laws will not be applied to a defunct marriage unless the ends of justice will be served thereby. *See also Togliatti v. Robertson,* 29 Wn.2d 844, 190 P.2d 575 (1948); *Oil Heat Co. of Port Angeles, Inc. v. Sweeney,* 26 Wn. App. 351, 354, 613 P.2d 169 (1980).[3]

Here, neither the purpose of the statute nor justice would be served by allowing Mrs. Haines to assert the statute as a sword to defeat satisfaction of a debt owed by her and directed in the decree of dissolution to be paid by her. *See Reid v. Cramer,* 24 Wn. App. 742, 748, 603 P.2d 851 (1979); *Nuhn v. Miller,* 5 Wash. 405, 31 P. 1031 (1892). By this holding we do not, however, determine the effect of the lien granted Mr. Haines in the decree of dissolution.

---

[2]This case is distinguishable from the cases cited by Mrs. Haines. In *Pixton v. Silva,* 13 Wn. App. 205, 534 P.2d 135 (1975), the parties at all times were married and living together and the question was whether the nonsigning spouse had ratified the transactions. In *Campbell v. Sandy,* 190 Wash. 528, 69 P.2d 808 (1937), although the parties had been separated for 4 years, there was no evidence the marriage was defunct. Mere physical separation does not establish a defunct marriage. *See Oil Heat Co. of Port Angeles, Inc. v. Sweeney, supra* at 354.

[3]In his article at 49 Wash. L. Rev., *supra* at 829 n.516, Professor Cross suggests that since when a marriage is defunct each spouse can create separate liability, the property held by the spouse who creates the obligation should be considered that spouse's separate property and "thereby reachable by his (or her) separate creditor even if it might be unavailable to the creditor while it was community property."

Reversed and remanded to proceed with the foreclosure.[4]

McINTURFF, C.J., and MUNSON, J., concur.

Reconsideration denied April 13, 1982.

---

[4]Although Mrs. Haines' similar argument relating to the former RCW 6.12.100 was raised for the first time on appeal, for purposes of remand, we hold for the same reason that provision is also inapplicable. That statute stated:

The homestead is subject to execution or forced sale in satisfaction of judgments obtained:

. . .

(2) On debts secured by mortgages on the premises executed and acknowledged by the husband and wife . . .